The final case on calendar for argument is KNK Promotions versus Walt Disney Studios. Counsel for appellant, please approach and proceed when ready. Good morning, Your Honor. Excuse me. Good morning. Will you please record? My name is Randall Jones, and I represent the appellant in this case, KNK Promotions. I would like to reserve, if I could, three minutes of my argument. All right. Watch your time, counsel. I will do my best, Your Honor. I would start by saying that, and I know the court knows this, but this case involves Evel Knievel, and I would, I guess, start by saying that the basis of this claim comes from the fact that Evel Knievel both literally and figuratively busted his behind for decades creating a brand which included a particular way he looked, a particular trade dress, and particular context in terms of what he was building as his brand. And then he ultimately also created a toy that he sold that became a substantial toy in terms of the industry sales. So that's sort of the background here when we get to this Toy Story situation. But I would also start out saying that obviously the purpose of this appeal is an appeal of a motion to dismiss. And that's obviously an important issue here, that it's a motion to dismiss stage as opposed to a motion for summary judgment. And I would point out, by the way, I've known Judge Mahan since he was in private practice. I've tried jury trials in front of him in state court when he was a state court judge, and I've had many cases in front of him in federal court, and I have great respect for Judge Mahan. The issue we have here is that Judge Mahan, for whatever reason, we believe in a motion to dismiss stage of a case, made certain assumptions that go directly against the standard in Rule 12b-6. Be specific. What are you referring to? Because some of these cases, a lot of them are resolved on 12b-6 motions. So where do you think he erred? Well, Your Honor, I think in particular there's only one case that I think Judge Mahan even cited to. It's the Mitchell case. It's an out-of-circuit case. It's an unpublished case from a district court where an issue like this was resolved under 12b-6. I believe all of the other cases, virtually all the other cases, were motion for summary judgment stage. And so I can refer you to, and I certainly pointed out in the brief, there are multiple different places where Judge Mahan made certain assertions, and if I can, I'd certainly like to get to those with the court. With respect to the arguments, as you know, we have claims both under the Nevada statutory scheme, the rights of publicity, and then we have Lanham Act claims. And then, of course, there was a denial of our motion to amend as well that is also on appeal. And I'd like to start out as an example of where we think Judge Mahan got this one wrong. He dismissed the claims under the Nevada statute, NRS 597.770, and in particular he quotes, which is something we referred to specifically in opposition to the motion to dismiss below, this particular statute, 597.9702D. And inexplicably, Judge Mahan failed to cite or refer to a material clause of that statute. He just either ignored it or he didn't get it or we're not sure what, but that, we believe, would have categorically changed the outcome of his analysis of that statute. And I'll read it for you briefly. The title is Existence and Term of Right, Written Consent Required for Commercial Use Exceptions. So it's an exception to the exception that he did not quote in his ruling, which had he done so, we believe would have required him to come to a different result with respect to the statute. And 2D says, Any commercial use by another of the name, voice, signature, photograph, or likeness of a person requires the written consent of that person or his or her successor in interest unless, in subsection D, the use is an attempt to portray, imitate, simulate, or impersonate a person in a play, book, magazine, article, newspaper article, musical composition, film, or radio, television, or other audiovisual program. And he stopped there. He did not include in his ruling the next part of that clause that says, quote, except where the use is directly connected with commercial sponsorship. Right. So what does that mean, commercial sponsorship, in your view? Well, that's a great question, Your Honor. And unfortunately, our Nevada legislature has not given us a specific definition of that. Now, you can look on the Internet, as we've done, and you can look up a definition of commercial sponsorship, which presumably, and that's all I can say, is presumably, because we don't know for sure, that's what Nevada legislature was looking at, a common usage of that term in the industry. And that's essentially, as I understand it, where somebody invests, and he called the sponsor an investor, in a commercial enterprise. But did you argue to the district court that that exclusion to the exception applied? Well, here's the problem, Your Honor. We did argue on the motion to dismiss level. We specifically cited to this section of the statute, 597-790, but we didn't get into the details because we didn't anticipate, and I don't see how we could have, that when he ruled on the motion to dismiss, that he would not include that particular part of the statute. But if you're — I don't understand that argument, because if you're making your point to the court regarding why this statute has been violated, then to me, you tell the complete story to the court, and you don't wait for the court to initiate that discussion. And I get your question now better, and I should have been better with my answer. If the court looks at the excerpts of the record at 222, that's our opposition, my client's opposition to the motion to dismiss, it specifically refers to commercial sponsorship in the opposition to the motion. Right, and so what is your position as to why that exclusion regarding commercial sponsorship applies? Because in this case, they used our client's intellectual property to sponsor a commercial enterprise, and I don't know if this is — What was the commercial enterprise that was sponsored, in your view? Two things, Your Honor, and this is critical when I say two things. One is a film where they made money off of this intellectual property. Two, they have a stunt cycle. And by the way, I want to make sure this is clear to the court. These are two distinct things, and that's another error we believe that Judge Mahan did. He conflated the stunt cycle with the film as if — and he uses the example of Fox Empire as, well, if it's a part of the promotion of the film, then it's essentially subsumed by it. That is absolutely not the case. That's not how we pled it, by the way. But what — so I have two questions on this. So wouldn't the transformative use defense be applicable here? Well, that's another error that, unfortunately, that Judge Mahan made because he — first of all, transformative use is a fact-driven issue. So it's never, almost never, if not never appropriate on a motion-to-dismiss stage. But if it were, would transformative use be a defense to the commercial sponsorship allegations? The answer to that is that certainly it could be. Our position is it would never be in a motion-to-dismiss stage. But the problem, again, is compounded because Judge Mahan, when he went through the transformative use issues, he didn't analyze all the factors. And I was about to get into that. I just wanted to focus on the statute just for one more moment, and I'll get right to your question on transformative use. One more point I want to make about the statute. The statute says, also goes on at the bottom of that statute under 597-970, quote, for purposes of this subsection, the issue of whether a use is directly connected with commercial sponsorship is a question of fact to be determined by the trier of fact in an action brought pursuant to 597. So the statute itself tells you this is a question of fact. It is telling you, the legislature is telling any party out there, this has to be decided by the trier of fact. You cannot do it in a motion-to-dismiss. Can we just take a step back here maybe? There are some important differences between these two personas, Evel Knievel on the one hand and Duke Kaboom on the other. Can you address those? Because I think what was driving the district court, I think what's driving your friend on the other side, is to point those out and to emphasize those, and that's driving a lot of the arguments in this whole case. And I believe you're absolutely correct, Your Honor, with respect to what Judge Mahan did. And I think that's part of the error. He made certain assumptions. He turned Twombly and Iqbal on their head. He made assumptions about those characters, the two different characters, that were essentially his own subjective findings. And, again, it depends on how you analyze this. Are you analyzing it in the context of the whole? Are you looking for specific little issues that might be different? And our position is that when you – and this actually goes to the Gordon case and why we believe Gordon was not properly analyzed here. It was not – and Gordon is, we believe, an extension of and a refinement of Rogers. And we don't dispute Rogers applies. But you have to look at this case in the context of Rogers. And Rogers says, if you look at this – and let me try to get the language correct so I don't mess it up here. This explicitly misleading part of the analysis, and that's really under the Lanham Act as opposed to the right of publicity. Counsel, if you want to get to that explicitly misleading, wouldn't it have to be the case that Disney was explicitly misleading consumers into thinking that Eva Knievel endorsed the product or the film? Isn't that the explicit misleading, Pearl? I think that is part of explicit misleading, yes, sure. I don't disagree with that. But do you have that here? Well, we're at a motion to dismiss stage. But did you plead that? Did you plead that Disney explicitly misled consumers into thinking that Eva Knievel endorsed or was a part of this film? I don't believe we used the word endorsed. And I can't be sure about that, Your Honor. I don't have that off the top of my head. We certainly allege that this was misleading to consumers. That's the whole issue we had here, is that they misled consumers about Eva Knievel's connections with this film. But did they mislead consumers or did they mislead participants? Because your supporting documents seem to say that they misled the people who were going to be acting in the film, who were going to be writing the story, to say, think Eva Knievel. So that's not misleading the consumers. It's misleading perhaps the participants. But isn't that different? Well, Your Honor, I would actually say it's more damning if you use the expression for Disney because the idea then being that the writers themselves use this character as the idea for their film. Is that unlawful to do that? It can be. It can be, and you have to take it into the context. But, again, we're at the motion to dismiss stage where every inference has to be taken in a way most favorable to the non-moving party. Even if we take that most favorably to you, that just indicates that that was the basis for transforming, for the transformative use defense. Well, and I see my time is running low here. Go ahead. I'll give you a couple minutes for rebuttal. It's always amazing how quickly this time flies. Sitting there, it seems like a long time. When I'm up here, it seems very quick. Well, again, it's all in the briefs, and I certainly ask you all. We've outlined this whole issue of the statutory scheme, the transformative use. He didn't analyze all of the factors. He actually just bypassed several of the factors. And the amended complaint, which he denied our ability to amend, addresses many of the other issues that you just asked about, Judge Rawlinson, where we show specific information where they are promoting evil can evil as a way for the people that are selling products and the film to relate to this character. Can I ask you, I mean, is your argument essentially that any time somebody in an expressive work has a motorcycle that jumps over things and the person is wearing some kind of costume, that that is an infringement on your client's intellectual property? Absolutely not. Again, that's the whole point. You have to take it as a whole, and to do it at the motion-to-dismiss stage we think is completely inappropriate. So what specifically have you alleged about this particular character that you think would cause, you know, we can call it what we want to, consumer confusion, explicitly misleading, any of these buckets that are at issue in these different claims? The type of motorcycle. That's a very specific thing. This motorcycle is part of the persona. It's the fact that the suit, so you take a suit, this is a patriotic suit. Evil can evil was known for a suit that had American emblems on it. He had a short cape. He had flag-related emblems on his helmet. He was known for doing spectacular jumps and, unfortunately, also known for some spectacular crashes. And that is, all he did here was they took the suit, virtually they put a handlebar mustache on the character, and they took the suit and they made it a patriotic suit for Canada. And we know we have consumer confusion based upon some of the allegations in the operative complaint and in the proposed amended complaint. What was the nature of the consumer confusion? The issues like consumers thinking they were buying the evil can evil toy when they got the Duke Caboom toy. Those kinds of issues. This is, and by the way, again, it's the context. Did you do a consumer survey? We did not. We didn't get to that stage, Your Honor. Unfortunately, we were unable to do that. And when I say that, these allegations are anecdotal. But, again, taking the facts as presumed to be in most favorable to the non-moving party. So if you take it in the context, again, if you want to isolate little things, Disney's got their point. If you take the totality of the circumstances, it leads to, we submit, one unavoidable conclusion. But, again, Judge Mahan said, I'm going to make some assumptions. And I'm going to say, he says words like, I believe that this doesn't occur. So, and I don't want to, I don't want to take up any more of my time that I've already gone over. But I do appreciate any time you allow me on rebuttal. All right. Thank you, Counsel. We'll give you a few minutes on rebuttal. Let's see how it goes with opposing counsel. Good morning, Justices. Mark Trottos. People say there's no justice on the Ninth Circuit. We're judges. Thank you, Judge. Mark Trottos for Disney Pixar. I'm happy to have a few moments this morning to explain why Judge Mahan's decision was absolutely correct at this stage, and why he had all the evidence he needed to make this decision. The complaint, more than 35 pages, was thoroughly outlined, the claims that were being made by the Evel Knievel party, K and K. And in particular, the court had before it the film. That was the basis under which the claims were made for the film portion of it. There was ample time for the court to analyze that film and the materials that had been presented both by Disney and by K and K. The interesting thing that occurred here is the court looks at the proposed amended complaint that is filed just before the court is rendering its decision, and the court looks at the new allegations and concludes that they do not change the opinion of the court that this case is easily disposed of at the motion-to-dismiss stage based upon clear Ninth Circuit case law. The court was a little bit equivocal, in all fairness, by dismissing without prejudice and saying that there might be a cause of action. What do you make of that equivocation? The court makes it very clear that he did not see that there was an impossibility that a set of facts might rise to the level that a valid claim is made, but based upon the pleadings that he had been given, it had not yet met the standard. Including the proposed amended complaint. And so he dismisses with leave to amend. He does it by saying we're not going to dismiss with prejudice. There may be some set of facts that are available to the plaintiff still. But he entered judgment, so. He does enter judgment. Right. So it's over. It is, and if K and K wanted to proceed, they'd have to file a brand-new action, and that's clear. But with what? I mean, it was a little curious as to why the case was dismissed without prejudice, because they would have to get some other information. Presumably your client's the only one that holds that. Well, I think the publicly available information, the court asked a good question. Is there survey evidence? If survey evidence had been there, that would happen. The important consideration that this court has to make is did the court correctly apply Rogers in the application of the analysis in the Lanham Act side, and was the court's application of the transformative use proper in the right of publicity claims? Did the court – I have some questions about the trade dilution claim. Sure. First of all, did the district court address that? No, the court didn't address that. Why not? I think because the issue was not well pled at the complaint side. In order to have a dilution claim, you've got to have a famous mark, and there was not an allegation that the mark had become famous. In fact, there's real ambiguity as to what exactly the mark was. Specifically, in the trade dress side of the case, there's this broad allegation, well, it's a combination of the motorcycle. But these are all scenes of fair elements that occur in any kind of situation where you've got a stunt person who's riding a motorcycle. It seems like maybe the district court assumed that Rogers applied to the trademark dilution claim. Does it? It does. It does. It does? It does to this extent. Rogers is essentially trying to balance these important considerations. Somebody writes in a mark versus the compelling requirement of honoring the First Amendment. One of the things that Rogers does is it says we are not going to limit the commerce language and use of somebody's mark if it serves a creative purpose and it's part of the transformation of essentially creating new works of art. And that's exactly what Disney has done here. But the district court didn't go through any of that analysis for the trade dilution claim. So why was it permissible for the district court to dismiss that claim without analyzing it? Again, because the underlying pleadings had not adequately defined what it was that was being diluted. It's got to be a famous mark and it's got to be articulated as a famous mark and they never articulated what the mark was. There is this vague reference to infringement of the intellectual property, but never clarified. Never said we have a registration in our trade dress. Never said we have these specific types of intellectual property. But that could have been, if the district court had made those points, the complaint could have been amended to address those. And so I'm not sure that that is enough to say that the trade dilution claim was properly dismissed if it weren't properly pled and the district court didn't analyze it on that basis. How was KNK to know that that was the basis for it being dismissed? The point is well taken on the issue of the dilution claim. If that had been something that was further still on appeal here, that was essentially an element of the Lanham Act claims that I think Rogers tried to do the analysis of. And the court did a good job on the Rogers portion of the claim. Well, but the problem is if the Rogers test doesn't apply to trade dilution, did the district court err by analyzing the trade dilution claim under the Rogers rubric? I don't believe so, Your Honor. I believe that what the court was trying to do as a summary is simply this. The court looked at the pleadings, both the first amended complaint and the proposed second amended complaint, and said applying Rogers, this is artistically relevant. And if you look at the second portion or prong, you must say is this explicitly misleading? And the court concluded there was nothing that showed this was explicitly misleading in any way to the consuming public, the people that buy tickets to the film or the people that buy the individual stunt cycles. Go ahead. I thought on this issue there was something in your brief about the noncommercial use exception, that even if Rogers didn't apply, it's a noncommercial use because it's essentially expressive activity. So it's another way, it's an alternative ground. It is an alternative ground. And we essentially have two additional alternative grounds. The expressive use, we've got a transformation, and we've got the likeness issue. And, again, the point we've made is the likeness is never fully articulated in either the first amended complaint or the second amended complaint, nor is the issue of the transformative use ever really addressed by either of those proposed complaints. Counsel, what's your response to opposing counsel's observation that these are all jury questions and that the district court impermissibly made factual findings when resolving these issues? We had all the materials in the pleadings. The film was particularly referenced in the complaint. It was attached. The court had the opportunity to evaluate at that stage and make a determination. The court says in the very last sentence of the order specifically that for judicial economy, the court is making the decision. This is, I think, the court applying Federal Rule of Civil Procedure I, looking for the just, speedy, and inexpensive resolution of the matter. And I think that's what the court did. Let me ask you this about the Nevada statute, the right of publicity statute. Opposing counsel said that the court elided the final part of the statute that talks about commercial sponsorship. What's your response to that argument that was made by opposing counsel? I believe it mistakes the idea that the toy that was a promotional item is somehow separate and apart. Counsel made the argument, well, they're two different things. They're not. They're inextricably intertwined. The back story of the character, Duke Caboom, is one of the allegations they make in their opposed admitted complaint. Specifically, they say frequency of crashing. You heard counsel, again, argue that same point today. That is explained in Disney's storytelling by saying the reason that Duke Caboom was reticent about jumping was because he didn't perform as well as the advertisements in the commercial and his owner threw him away. That is intricately intertwined with the character in the film. So you can't separate these out. And the court realized at this stage that what we really are looking for here is, are the pleadings on their face adequate to get us into a place where further discovery should go on? Again, fundamental. I'm sorry to interrupt you. Can I ask you a question about the right of publicity statute? So as I understand your briefing, both you and your opposing counsel are relying on California case law because there's little to no Nevada case law interpreting the Nevada statute. But as I read these two statutes, they're different. So the California law applies to, quote, commercial mediums. But the Nevada law seems as if it's narrower because it applies specifically to expressive works like plays, books, and films. Is this distinction problematic for Disney? And how are we to interpret the Nevada statute without any guidance from the Nevada courts? Well, we have a large state with a small population and not the sheer number of cases. And I will share with the court that I'm familiar with the rationale that we looked at the California statute because I had the privilege in 1989 to propose the statute to essentially draft the original language that went to Judge or to Senator Bob Coffin. I had the privilege of testifying before the legislature with my clients, the Orson Welles Estate, for the passage. And from the inception of this statute, the intention was to essentially rely upon the California statute at its heart and to rely upon California case law as needed to fill in these ambiguities. So what I can tell you relative to this commercial exploitation, it was clear that what the Nevada legislature tried to do was avoid First Amendment entanglements. And so it pointed out, specifically in the language of this statute, that we were looking for things like books and the issues of films as creative expressions. Again, elevating First Amendment to the kind of position that we think this balancing that comes up in the Rogers application does. And the transformative nature of the Duke Caboom character was, in fact, what the court found was necessary under the Nevada right of publicity statute to apply as well. Counsel, could we sort of avoid this issue and avoid interpreting the Nevada statute and simply find that the transformative use exception applies? Do we need a statutory basis here? I think it's completely done, and you can make the decision based upon the transformative use or the failure to plead that it was an exact likeness or a likeness. Either one of those basis could have been used by the court to dispose of this action. Shifting gears a little bit to the denial of the motion to amend, it seemed that the court considered the motion to amend the complaint under Rule 15, the liberal amendment policy. But as I read the record, the motion to amend occurred after the deadline in the scheduling order. So at that point, it seems the court should have been applying Rule 16B in good cause and considering K&K's diligence, but I don't see that analysis. So if we conclude that the district court considered that motion under the wrong standard, under the wrong rule, why is that not an abuse of discretion? Because the presumption is always, in an abuse of discretion argument, in favor of the court giving deference to the trial court. Specifically, we look at the trial court's analysis and determine whether or not it, in fact, is abusing its discretion only if it's in a very egregious fashion. And in this instance, the ability to file a new case, that is, because the court did not dismiss with prejudice, gives the relief that is necessary should the plaintiff decide to proceed again. All right, thank you, counsel. It appears there are no further questions. Thank you. Let's give two minutes for rebuttal. I'm going to start with the dilution point that you brought up since it was one I had in my notes but didn't have a chance to get to. But that is error on its face because, as you said, Judge Mahan applied or said Rogers is the basis of his dismissal of the dilution claim. And we all, I think, the court has acknowledged or recognized that that's not the case. And I would also point out Disney said nothing in its motion to dismiss about dilution being subject to Rogers. So they've waived that argument to the extent that there's even any basis to do it. We don't know why he did that. Well, if he did do it based on Rogers, we know that's an error, plain and simple. But with respect to the amended complaint, real quickly because I know I have limited time, we have no analysis of why he did what he did. As you point out, Judge, there's an internal inconsistency in his comments about futility. It's not futile, but it looks like it's kind of futile. He doesn't analyze the other three factors at all. He doesn't talk about undue delay, prejudice, or good faith. And, by the way, as you all know, Ninth Circuit, the touchstone of analysis of an amended complaint, again, Rule 15, Ninth Circuit has said it's prejudice. There's been no reference of any kind of prejudice other than they'd have to keep litigating the case. And we could have gone forward and filed, but we didn't want to do that without getting some direction from this court. But didn't the judge have the allegations that would have been made if amendment were allowed? He did, but we don't know what he did with them because there's no analysis whatsoever. There are statements in the amended complaint because we were able to do some discovery during dependency of the motion to amend where we got references, and this goes to your question about consumer confusion, where we talk about this confusion about the nine-inch daredevil, specifically related to the stunt cycle, versus my client's seven-inch daredevil that shows these daredevils that look virtually identical, other than their suit, jumping through hoops of fire with the same kind of energizer to speed them along the way, and one's seven-inch and one's nine-inch. But does that get you past transformative use? Well, again, the problem with transformative use is twofold. One is this court has held in the NCAA case transformative use is a fact-driven issue. It doesn't always have to be. It doesn't have to be. It doesn't have to be, but that is, again, is this the exception to the rule? And I could point you to multiple different places where Judge Mahan made assumptions about, here's a quote, quote, Duke Caboon is a representation of Disney's expression in the film and not an attempt to imitate Evil Knievel. That's a quote from the judge. He's made that determination. At the motion to dismiss stage, he goes on to say, contradicting himself later, that, where is the language? It bears noting the court's finding that, quote, Evil Knievel does not square, blah, blah, blah, blah, blah. I'm sorry. We understand your point, counsel. In your amended complaint, you're trying to say that they actually derived the figure from Evil Knievel. The problem is that if it's integrated into an expressive medium, it's difficult to say it's not transformed. And, by the way, with respect to that issue and in terms of transformative use, he did not analyze, just didn't even talk to him. He lists them all in his order, but he only analyzes two of the five. He analyzes four and three, and he just completely ignores the others. So, again, that's why we believe there's not a sufficient record by Judge Mahan of what he was doing and what he was thinking. He didn't go through the whole process, and I would certainly submit to the court, how could the exception, this be the exception about transformative use being a fact-driven issue when he doesn't even analyze several of them? But we're on de novo review, so we can look at the record. That's true. All right. Thank you, counsel. Thank you very much. Thank you to both counsel. The case just argued is submitted for decision by the court. That completes our calendar for today. We are on recess until 9.30 a.m. tomorrow morning. All rise.
judges: RAWLINSON, BADE, BRESS